IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>BRANDON CHAPMAN,<br><br>                    Defendant. | **MEMORANDUM DECISION and ORDER DENYING MOTION TO SUPPRESS**<br><br>Case No.  2:12-cr-63-DN<br><br>District Judge David Nuffer |

After holding hearings[1] on Defendant Brandon Chapman's Motion to Suppress,[2] and having considered the filings of both parties,[3] the Court makes the following factual findings and enters this order denying the motion.

## Findings of Fact

On the evening of February 1, 2012, law enforcement officers received a telephone call from a hotel clerk at the La Quinta Inn, located on 7300 South and Catalpa Drive in Midvale, Utah. (Transcript of April 30, 2012 Hearing "Tr." at 77-78).  Relayed via a dispatcher, the information was to the effect that while checking into room 266, Defendant asked the hotel clerk to omit his name from the hotel rental record because he was a wanted individual. (Tr. at 78).  Defendant paid for the hotel room with cash. (Tr. at 78).  Defendant and his companion, McKenzie Mazza ("Ms. Mazza"), were the only two

---

[1] Minute Entry for Motion to Suppress hearing on April 30, 2012, docket no. 33; Minute Entry for hearing on Motion to Suppress briefs on July, 20, 2012, docket no. 51.

[2] Motion to Suppress, docket no. 23, filed March 8, 2012.

[3] Memorandum in Support of Motion to Suppress, docket no. 40, filed May 17, 2012; United States' Memorandum in Opposition to Defendant's Motion to Suppress Evidence, docket no. 42, filed May 23, 2012; Reply Memorandum in Support of Motion to Suppress, docket 43, filed June 16, 2012.

occupants of the room, which was registered in Ms. Mazza's name. (Tr. at 78).

Officers verified an outstanding warrant for Defendant's arrest. (Tr. at 78).  They were unaware of any criminal history related to Ms. Mazza. (Tr. at 78).

Officer Scott Hansen, Officer Kyle Gleue, Deputy U.S. Marshal Mark Thomson, Deputy U.S. Marshal Derryl Spencer and Special Deputy U.S. Marshal Jex went to the La Quinta Inn, where the clerk confirmed Defendant's presence in room 266.  The officers obtained a key to the room from the clerk. (Tr. at 78-79).  Officers Gleue and Jex went to the rear of room 266, while the other officers went down a hallway leading to the hotel room's door. (Tr. at 79).

Deputy Thomson knocked and announced that officers were present and had an arrest warrant for Defendant. (Tr. at 79, 82).  A male voice responded from inside the room, explaining that Defendant would come out. (Tr. at 79).  Officers stood on both sides of the doorway with their guns drawn. (Tr. at 79).  The officers told Defendant to slowly open the door with his hands up. (Tr. at 79).

Defendant opened the door according to the officers' requests. (Tr. at 79).  He was pulled out of the hotel room and his hands were handcuffed behind his back. (Tr. at 80). Officer Hansen took Defendant down the hall. (Tr. at 80).  As Defendant exited, Deputy Thomson caught sight of a female, Ms. Mazza, at the rear of the room by a window. (Tr. at 79-80).  Two to three officers (and possibly a police dog) entered the room, guns drawn, to perform a protective sweep, looking for people who were not under the officers' control. (Tr. at 43-44, 80).  The officers did not talk to Ms. Mazza or Defendant about entering the room. (Tr. at 80).  Some cash was seen on the bed, and no small places

were searched. (Tr. at 80).

Immediately upon taking Defendant into custody, Officer Hansen patted Defendant down and found a bag containing a substance that field-tested positive for methamphetamine, on his person. (Tr. at 80).  Also at about this same time, Deputy Thomson asked Defendant, in what Thomson described as a "joking" manner, about when defendant was going to "work" for him, or cooperate with him, as an informant. (Tr. at 30).  That jocular inquiry was not preceded by *Miranda* warnings.

Upon completion of the protective room sweep, Ms. Mazza was brought outside the room, where she interacted with Officer Hansen. (Tr. at 80).  Officer Hansen believed that Ms. Mazza appeared frightened and overwhelmed. (Tr. at 80, 83).  To Hansen, Ms. Mazza appeared to be seventeen or eighteen years old.  Also, Hansen testified that Ms. Mazza "appeared confused.  It was apparent to me that she'd never been in a situation like that before."  (Tr. at 66).

In the hallway, Deputy Thomson had a conversation with Defendant about retrieving his shoes because he was barefoot. (Tr. at 80).  Defendant and Deputy Thomson returned to the hotel room where Deputy Thomson began putting Defendant's shoes on as Defendant sat on the bed. (Tr. at 81).  As Deputy Thomson was putting on Defendant's shoes, Defendant informed him, in a quiet voice, that there was a gun in a nearby nightstand drawer. (Tr. at 81).

After Defendant was again removed from the hotel room, Deputy Spencer spoke with Ms. Mazza regarding consent to search. (Tr. at 81).  Deputy Thomson was also present, and after asking Ms. Mazza if she understood the consent to search form,

watched her sign it. (Tr. at 81).  Deputy Thomson thought that Ms. Mazza appeared calm at the time of signing.  After Ms. Mazza signed the consent form, officers searched the room and found the firearm in the drawer of the nightstand.  They also found a scale and a glass pipe.  (Tr. at 80-81).

This prosecution followed.  Several weeks before the evidentiary hearing on this motion to suppress, defense counsel asked the prosecutor, via e-mail, to locate and subpoena Ms. Mazza to appear at that evidentiary hearing.  Defense counsel informed the prosecutor that the defense had been unable to locate Ms. Mazza, and provided address information, for Ms. Mazza, that the defense had obtained.  (Def. Exh. B).  The prosecutor declined the defense request to produce Ms. Mazza at the hearing.  (Id.)

## Conclusions of Law

Defendant has established that he had a reasonable expectation of privacy in the hotel room (sometimes called Fourth Amendment "standing" to challenge a search). Defendant does not challenge the initial search of his person.  Neither does Defendant challenge the initial protective sweep of the hotel room.

Defendant first challenges the legality of Deputy Thomson's entry into the hotel room for the purpose of retrieving Defendant's shoes.  As a part of that challenge, Defendant seeks to suppress his statement to Deputy Thomson, while retrieving his shoes, about the presence of a firearm in the nightstand.

Under the circumstances, there was implied consent to do what was necessary to obtain Defendant's shoes.  There is no evidence that Deputy Thomson did anything more than what was necessary to obtain Defendant's shoes.  Defendant requested his shoes,

and the circumstances of February in Salt Lake City and transport to jail would imply that the shoes were needed.

The Court concludes that Defendant's statement to Deputy Thomson regarding the gun's location was spontaneous, voluntary, and that it could have occurred outside of the hotel room. That the statement occurred in the hotel room while retrieving Defendant's shoes is irrelevant to Defendant making the statement. The conversation could have occurred outside the room. The earlier comment Deputy Thomson made to Defendant about Defendant working for him, or cooperating with him, was not interrogation. Deputy Thomson's statement was not about any alleged crimes that Defendant had committed and was not a statement that would call forth an unrelated admission about a gun. For these reasons, Defendant's statement about the gun's location will not be suppressed.

The next issue pertains to the officers' search of the hotel room to locate and seize the firearm, the scale, and the pipe. Defendant challenges that search, contending that Ms. Mazza did not voluntarily consent to it. It is the government's burden to prove voluntary consent by a preponderance of the evidence. While Ms. Mazza may have initially been overwhelmed, unsettled or scared immediately after the protective sweep, Officer Thomson testified that Ms. Mazza was calm; that the consent form was read and explained to her; and that she understood it before she signed it. This evidence is sufficient to find, by a preponderance of the evidence, that there was valid consent to enter the hotel room.

There is no authority, and the Court finds no requirement, that a person who signs

a written consent form testify at an evidentiary hearing in order for the government to meet its burden.

For these reasons, the Motion to Suppress[4] is DENIED and the gun, scale, and pipe will not be suppressed.

SO ORDERED.

Dated August 16, 2012.

BY THE COURT:

David Nuffer
United States District Judge

---

[4] Docket no. 23.